# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# BEAUMONT DIVISION

FILED: **9/9/10**
U.S. DISTRICT COURT
EASTERN DISTRICT COURT
DAVID J. MALAND, CLERK

No. 1:09-CV-974

MARIA ESCUADRA

                    Plaintiff

v.

GEOVERA SPECIALTY
INSURANCE COMPANY, ET AL.

                    Defendants

---

## Opinion Re Motion To Remand

---

This "Hurricane Ike case" is assigned to United States district judge Ron Clark and is referred to the undersigned for pretrial proceedings under an administrative, unwritten referral order entered on November 19, 2009.

Unlike most such cases filed in or removed to this court after Hurricanes "Rita" and "Ike," the parties find themselves unable to resolve their dispute amicably, and they jointly request expedited rulings on two pending motions: (1) plaintiff's motion to remand this case back to the 172nd Judicial District Court of Jefferson County, Texas, and (2) defendant's motion to compel appraisal under the provisions of the homeowners' insurance policy at issue in this case. After briefing, both motions were argued orally at a hearing convened on July 20, 2010.

Plaintiff's motion to remand argues that this court lacks subject-matter jurisdiction, an issue that logically must be determined before addressing a non-jurisdictional appraisal question. Accordingly, this opinion is limited in scope to the question of whether this action must be remanded.

## I.  Magistrate Judge Authority

United States magistrate judges lack authority to adjudicate federal civil cases absent consent of all parties. The parties to this case have not consented to entry of judgment by a magistrate judge. A threshold question, therefore, is whether a motion to remand – which does not adjudicate the *merits* of a claim or defense, but which can result in *terminating proceedings in federal court* – is within a magistrate judge's authority to determine.

No definitive Supreme Court or Fifth Circuit decision teaches whether orders of remand adjudicate claims or defenses. Lower courts and other circuits are split.[1] But, in a recent case where only pretrial matters were referred to a magistrate judge, the Fifth Circuit affirmed a magistrate judge's order remanding certain actions without objecting to the magistrate judge's action.[2] In that case, however, the magistrate judge's authority to act on the remand motions was not challenged, and the appellate court's recitation of historical facts reveals that the presiding district judge reviewed and ratified the magistrate judge's order. Thus, magistrate judges apparently may rule on motions to remand at least when district-judge review is not foreclosed.

---

[1]     Compare Saxon v. Thomas, No. 06-2339, 2007 WL 1974914, at *2 (W.D. La. June 29, 2007), Robinson v. Cheetah Transp., No. Civ. A. 06-0005, 2006 WL 1453036, at *1 (W.D. La. May 17, 2006), Vaquillas Ranch Co. v. Texaco Expl. & Prod., Inc., 844 F. Supp. 1156, 1160-63 (S.D. Tex. 1994), and City of Jackson v. Lakeland Lounge of Jackson, Inc., 147 F.R.D. 122, 124 (S.D. Miss. 1993), with Williams v. Beemiller, Inc., 527 F.3d 259, 266 (2d Cir. 2008), Vogel v. U.S. Office Products Co., 258 F.3d 509, 517 (6th Cir. 2001); First Union Mortg. Corp. v. Smith, 229 F.3d 992, 996 (10th Cir. 2000), and In re U.S. Healthcare, 159 F.3d 142, 146 (3d Cir. 1998).

[2]     In re 1994 Exxon Chem. Fire, 558 F.3d 378, 382-83 (5th Cir. 2009).

Here, both parties can secure district-judge review of any order entered by the undersigned magistrate judge.[3]  Consequently, the undersigned will enter a direct, efficient and less cumbersome ruling instead of a report.

## II.  Parties; Nature of Suit; Factual Background

*A.*    *Parties*

Plaintiff, Maria Escuadra ("Escuadra"), resides and is domiciled in Jefferson County, Texas.

Defendants are GeoVera Specialty Insurance Company ("GeoVera"), ICA Adjusters, Inc. ("ICA"), and Jade Saucier ("Saucier").  GeoVera, a corporation with its principal place of business in California, is a citizen of California.[4]  ICA and Saucier are both citizens of Texas.

*B.*    *Factual Background and Proceedings*

Escuadra's residence, located in Beaumont, Texas, allegedly sustained damages as a result of Hurricane Ike, which struck southeast Texas in September 2008.  When this loss occurred, Escuadra owned a Texas homeowners' insurance policy that insured her home against direct physical loss of or damage to the property caused by windstorm (the "Policy").  GeoVera issued the Policy, and it was in effect at the time of the alleged loss.

---

[3]    Rule 72(a), Federal Rules of Civil Procedure, and Title 28, United States Code, Section 636(b)(1)(A) provide mechanisms for securing reconsideration of magistrate judges' pretrial orders.  Such procedures clearly are available when a magistrate judge *denies* a motion to remand because the case remains in federal court.  When a magistrate judge *grants* the motion and orders remand, Local Rule CV-83(b) provides that the clerk of court shall not transmit the case file back to the appropriate state court *sooner than the twentieth day following entry of the order.* Consequently, an aggrieved defendant can seek district judge review of the remand order before the case actually is remanded.

[4]    Plaintiff's original state court petition describes GeoVera as "incorporated in and having its principal place of business outside the State of Texas."  Pl.'s Original Pet., ¶ 3.

Escuadra filed a policy claim for roof damage, water damage, wind damage, contents damage, foundation damage, and structural damage. GeoVera retained ICA and Saucier to adjust Escuadra's claim. Based upon Saucier's investigation and evaluation of Escuadra's claim, GeoVera remitted to Escuadra payment in the amount of $6,574.99.[5]

## C.    Nature of Suit and Proceedings

On October 5, 2009, Escuadra brought suit in the 172nd Judicial District Court of Jefferson County, Texas. Escuadra alleged that the homeowners' insurance payments she received were insufficient, and GeoVera failed to adequately settle or to make full payment on her claim. Against GeoVera, Escuadra asserted causes of action for breach of contract, breach of the duty of good faith and fair dealing, fraud, conspiracy to commit fraud, and numerous violations of the Texas Insurance Code. Against ICA and Saucier, Escuadra asserted causes of action for fraud, conspiracy to commit fraud, and numerous violations of the Texas Insurance Code as follows:

1.    Misrepresented to plaintiff material facts relating to the coverage at issue. TEX. INS. CODE ANN. § 541.060(a)(1) (Vernon Supp. 2007).

2.    Failed to make an attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, even though liability under the policy was reasonably clear. TEX. INS. CODE ANN. § 541.060(a)(2)(A).

3.    Failed to promptly provide plaintiff with a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the offer of a compromise settlement of plaintiff's claim. TEX. INS. CODE ANN. § 541.060(a)(3).

---

[5]        Def.'s Mot. to Compel Appraisal, Ex. B-2, May 3, 2010.

4. Failed within a reasonable time to affirm or deny coverage of the claim to plaintiff or to submit a reservation of right to plaintiff. TEX. INS. CODE ANN. § 541.060(a)(4).

5. Refused to pay plaintiff's claim without conducting a reasonable investigation. TEX. INS. CODE ANN. § 541.060(a)(7).

See Pl.'s Original Pet., ¶¶ 34-38 (Saucier), & 40-44 (ICA).[6]

GeoVera filed a notice of removal on November 18, 2009. The notice of removal invoked this court's diversity jurisdiction. Escuadra then moved to remand the action on December 16, 2009.

## III.  Motion to Remand

Escuadra's motion asserts that diversity of citizenship between her and *all* defendants does not exist. Namely, defendants ICA and Saucier are citizens of Texas, as is Escuadra. Accordingly, this court does not have original subject-matter jurisdiction, and removal on the basis of diversity jurisdiction was improper. Escuadra also argues procedural defects in GeoVera's removal of this action: (1) defendants failed to allege facts supporting that the amount in controversy is over $75,000.00, and (2) GeoVera failed to obtain timely consent from ICA and Saucier to join all defendants in the notice of removal.

GeoVera defends the propriety of removal by arguing that the amount in controversy exceeds the $75,000.00 jurisdictional requirement and that the citizenship of ICA and Saucier is irrelevant because they were joined improperly to defeat federal jurisdiction. Thus, their consent to removal was unnecessary.

---

[6] Presumably, Escuadra seeks to impose liability against ICA for alleged violations by Saucier under the doctrine of *respondeat superior*.

## IV.  Principles of Analysis

### A.    *Removal and Remand*

Under the federal removal statute, 28 U.S.C. § 1441, a defendant may remove a civil action filed in state court to the federal district court for the district and division where the state court is located *if that district court could have exercised original jurisdiction over the case.*[7]  A notice of removal must be filed within thirty days after a defendant is served with notice of suit, and all served and properly joined defendants must timely consent to removal.  See 28 U.S.C. § 1446(b); Brown v. Demco, Inc., 792 F.2d 478, 482-83 (5th Cir. 1986); see also Gillis v. La., 294 F.3d 755, 759 (5th Cir. 2002); Getty Oil Corp. v. Ins. Co. of N. Am., 841 F.2d 1254, 1262-63 (5th Cir. 1988).

To safeguard against wrongful removal, Congress authorizes motions to remand to state courts where actions originally were filed, based on various defects in removals.  See 28 U.S.C. § 1447(c).  When a motion to remand is filed, the removing party has the burden is to show that removal was proper.  See B., Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (5th Cir. 1981).

### B.    *Improper Joinder*

Generally, complete diversity of citizenship must exist between all plaintiffs and all defendants to create federal subject-matter jurisdiction in a case governed by substantive state law.  See Strawbridge v. Curtiss, 7 U.S. (1 Cranch) 267, 2 L.Ed. 435 (1806); Whalen v. Carter, 954 F.2d 1087, 1094 (5th Cir.

---

[7]        Congress specifically prohibits removal of certain actions that might have been brought originally in federal courts, e.g., Jones Act and FELA cases. See 28 U.S.C. § 1445.

1992). When non-diverse defendants are "improperly joined,"[8] however, their citizenship may be disregarded when determining whether the federal court enjoys original jurisdiction. See Jernigan v. Ashland Oil Inc., 989 F.2d 812, 817 (5th Cir. 1993). Similarly, improperly joined defendants need not consent to removal. Id. at 815.[9]

A defendant who asserts federal removal jurisdiction notwithstanding the presence of a non-diverse defendant bears a *heavy burden* of proving that the joinder of the in-state party in the state action was improper. Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd., 99 F.3d 746, 751 (5th Cir. 1996) (the party invoking the removal jurisdiction on the grounds of improper joinder bears a heavy burden); Green v. Amerada Hess Corp., 707 F.2d 201, 205 (5th Cir. 1983) ("The burden of proving fraudulent joinder is a heavy one."). And, "'[since] the effect of removal is to deprive the state court of an action properly before it, removal raises significant federalism concerns.' The removal statute is therefore to be strictly construed, and any doubt about the propriety of removal must be resolved in favor of remand." Gasch v. Va. Dep't of Transp., 491 F.3d 278, 281-82 (5th Cir. 2007) (quoting Carpenter v. Wichita Falls Indep. Sch. Dist., 44 F.3d 362, 365-66 (5th Cir. 1995)). Lastly, because jurisdiction of a federal court is limited, it must presume that a suit falls outside its jurisdiction. See Howery v. Allstate Ins. Co., 243 F.3d 912, 916 (5th Cir. 2001).

---

[8] The term "improper joinder" evolves from and includes "fraudulent joinder," a doctrine originally developed by courts to remedy bad faith joinder of a non-diverse party to prevent removal of a case to federal court. "Improper joinder" is a broader concept, however, and is adopted by the Fifth Circuit as its preferred terminology. Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 571 n.1 (5th Cir. 2004).

[9] "[A]pplication of this requirement to improperly or fraudulently joined parties would be nonsensical, as removal in those cases is based on the contention that no other proper defendant exists." Jernigan, 989 F.2d at 815. Therefore, when a defendant is improperly joined, it is not required to consent to removal. Id.; see also Rico v. Flores, 481 F.3d 234, 239 (5th Cir. 2007).

*C.*    *Framework for Improper Joinder Analysis*

1.    Basic Tenets

Consistent with the "heavy burden" mentioned above, several general precepts guide courts when assessing whether non-diverse defendants are joined improperly.  First, "[s]ince the purpose of the improper joinder inquiry is to determine whether or not the in-state defendant was properly joined, the focus of the inquiry must be on the *joinder*, not the *merits* of the plaintiff's case." Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 573 (5th Cir. 2004) (emphasis added); see also Guillory v. PPG Indus., Inc., 434 F.3d 303, 309 (5th Cir. 2005) (in assessing whether a defendant has been improperly joined, the court is not required to "determine whether the plaintiff will actually or even probably prevail on the merits of the claim, but looks only for a possibility that the plaintiff might do so")  (internal citation omitted).

Second, the petition *as filed in state court* controls the inquiry.  See Cavallini v. State Farm Mut. Auto Ins. Co., 44 F.3d 256, 264 (5th Cir. 1995); see also Griggs v. State Farm Lloyds, 181 F.3d 694, 699 (5th Cir. 1999) (stating that the court must determine if there possibly could be liability "on the pleaded claims in state court").  Thus, post-removal filings may not be considered when or to the extent that they present new causes of action or theories.  See Griggs, 181 F.3d at 700 (citing Cavallini, 44 F.3d at 263).  With respect to matters pleaded in state court, however, the district court must resolve all contested fact issues and ambiguities of state law in favor of the plaintiff.  Gasch, 491 F.3d at 281 (citing Guillory, 434 F.3d at 308).

## 2.    Improper Joinder Standard

Improper joinder is established by showing (1) actual fraud in the pleading of jurisdictional facts or (2) an inability to establish a cause of action against the non-diverse defendant in state court. Gasch, 491 F.3d at 281; Smallwood, 385 F.3d at 573. Defendants claiming improper joinder based on the second prong must show that there is no possibility of recovery by the plaintiff against the in-state defendant based on the factual allegations in the state petition. In other words, the defendant must show that there is no reasonable basis for predicting that state law would allow recovery against the in-state defendant even if the factual allegations of the state court petition are true. Smallwood, 385 F.3d at 576.

Decisions from the governing court of appeals for the Fifth Circuit reflect that this form of improper joinder analysis may involve three discrete inquiries. These are:

### a.    *Does it Appear that Plaintiff Intended to Pursue Defendant?*

A threshold inquiry is whether it appears from the state court petition that the plaintiff actually intended to sue the non-diverse defendant. The court ascertains whether "the record . . . support[s] any inference that [plaintiff] intended to actively pursue claims against [the allegedly improperly joined defendant]." Griggs, 181 F.3d at 699. Factors to consider include whether the defendant is only minimally mentioned, whether any actionable facts or causes of action are specifically alleged against the defendant, and whether the defendant was ever served. Id. Thus, simply lumping all diverse and non-diverse defendants together in each liability averment without differentiation as to who did what reflects lack of intent to actually sue the non-diverse

defendants, especially in circumstances where each defendant likely played a discrete and dissimilar role from other defendants. See Griggs, 181 F.3d at 699 (undifferentiated liability averments against diverse and non-diverse defendants together do not satisfy the requirement to state specific actionable conduct against the non-diverse defendant); see also Doucet v. State Farm Fire & Cas. Co., No. 1:09-CV-142, 2009 WL 3157478, at *5 (E.D. Tex. Sept. 25, 2009) (stating that merely lumping insurer and adjuster defendants together, especially when asserting causes of action against both that can only be asserted against an insurer, indicates lack of genuine intent to pursue an adjuster ).

### b. *Does State Law Recognize the Cause of Action?*

A second inquiry is rudimentary. If a plaintiff cannot recover from an in-state defendant because the asserted claim is not valid under state law, that defendant is improperly joined. See, e.g., Gray v. Beverly Enters.-Miss., Inc., 390 F.3d 400, 405 (5th Cir. 2004) (explaining that if state law does not recognize the pleaded cause of action, there is no reasonable possibility for recovery, and remand should be denied).

### c. *Does State Court Petition Allege Sufficient Facts?*

Even when plaintiffs identify causes of action recognized by state law, defendants can defeat remand by showing that the state court petition failed to allege "specific actionable conduct" sufficient to support the causes of action asserted against non-diverse defendants. Griggs, 181 F.3d at 699. Thus, a third inquiry is whether *facts alleged* in the pre-removal state petition are sufficient to sustain the asserted cause of action. "Whether the plaintiff has stated a valid state law cause of action depends upon and is tied to the *factual fit* between the plaintiffs' allegations and the pleaded theory of recovery." Id. at 701 (emphasis added). Current circuit precedent directs trial courts reviewing "factual fit"

issues to *"conduct a Rule 12(b)(6)-type analysis."* <u>Smallwood</u>, 385 F.3d at 573 (emphasis added); <u>Anderson v. Ga. Gulf Lake Charles</u>, 342 F. App'x 911, 915 (5th Cir. 2009).

## V. Discussion and Analysis

GeoVera undertakes to establish improper joinder of ICA and Saucier by showing Escuadra's inability to prove a cause of action against these defendants in state court.[10] Proceeding under the second <u>Gasch</u>/<u>Smallwood</u> prong, GeoVera argues that the *facts alleged* are insufficient to sustain any of the numerous causes of action asserted against ICA and Saucier. Essentially, GeoVera argues that Escuadra's state court petition fails to allege specific actionable conduct that constitutes a factual fit between Escuadra's allegations and her pleaded theories of recovery.

### A. *Rule 12(b)(6)-type Analysis*

Rule 12(b)(6) of the Federal Rules of Civil Procedure is a procedural device for testing the sufficiency of *federal* complaints. It is awkward, if not perverse, when considering an improper joinder argument, to measure the adequacy of a *state* petition by federal pleading standards. This court previously has noted "an uneasy tension with comity implications" that arises when using a federal Rule 12(b)(6) standard to test the validity of a state court petition. <u>First Baptist Church of Mauriceville, Tex. v. GuideOne Mut. Ins. Co.</u>, No. 1:07-CV-988, 2008

---

[10]    GeoVera does not argue that Escuadra's state petition reflects lack of intent to sue ICA and Saucier. Such an argument would be futile as the petition contains separate sections devoted to causes of action asserted solely against these defendants. <u>See</u> Pl.'s Original Pet., ¶¶ 31-38 (Saucier), & 39-44 (ICA).

   Similarly, GeoVera does not argue that Texas state law does not recognize the causes of action asserted against ICA and Saucier in the state petition. Such an argument, again, would be futile because Texas clearly does recognize the asserted causes of action. <u>See</u> *infra,* Section V.*B.*

WL 4533729, at *4 n.6 (E.D. Tex. Sept. 29, 2008). And, within this circuit, at least one other district court has registered a similar concern:

> The question presented to the court in a motion to remand based on improper joinder is not one of sufficiency of the pleadings under *federal* procedural rules, but rather the plausibility of a plaintiff's claim under applicable state law against an in-state defendant. *This Court will not impose the heightened federal pleading requirement on actions immediately upon removal, so as to defeat state court jurisdiction on federal pleading requirements.*

Murphy v. Broyhill Furniture Indus. Inc., No. 2:08-CV-2092-M, 2009 WL 1543918, at *5 (N.D. Tex. June 2, 2009) (emphasis added).[11] But, imperfect or not, Smallwood's directive to conduct a Rule 12(b)(6)-type analysis is governing circuit law. And, because the parties do not suggest or propose a substantive analytical difference between a *pure* Rule 12(b)(6) analysis and a Rule 12(b)(6)-*type* analysis, and because the court's independent research fails to disclose any reported cases identifying such a difference, Escuadra's state petition will be reviewed under current Rule 12(b)(6) standards.[12]

### 1. Rule 12(b)(6) Standards

Rule 12(b)(6) authorizes dismissal of a civil action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). On a Rule

---

[11] The precise question before the court in Murphy v. Broyhill was whether a state petition alleging fraud was deficient for failing to comply with Federal Rule of Civil Procedure 9(b) heightened pleading standards.

[12] Although there is no *analytical* difference between a pure Rule 12(b)(6) analysis and a Rule 12(b)(6)-type analysis, the *scope* of the inquiry is different. Travis v. Irby, 326 F.3d 644, 648-49 (5th Cir. 2003). For Rule 12(b)(6) motions, a district court may only consider allegations in the complaint and any attachments. See, e.g., Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 313 (5th Cir. 2002). For improper joinder, the district court may in certain limited instances "pierce the pleadings" and consider summary judgment type evidence in the record and also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff. Griggs, 181 F.3d at 699.

12(b)(6) motion, the court "must examine the complaint to determine whether the allegations provide relief on any possible theory." <u>Ramming v. United States</u>, 281 F.3d 158, 162 (5th Cir. 2001) (citing <u>Cinel v. Connick</u>, 15 F.3d 1338, 1341 (5th Cir. 1994), <u>cert. denied</u>, 513 U.S. 868, 115 S.Ct. 189, 130 L.Ed.2d 122 (1994)). Dismissal is proper only if there is either: (1) "the lack of a cognizable legal theory," or (2) "the absence of sufficient facts alleged under a cognizable legal theory." <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1988).

When a district court reviews a motion to dismiss pursuant to Rule 12(b)(6), it must construe the complaint in favor of the plaintiff and take all well-pleaded facts as true. <u>Kane Enters. v. MacGregor (US), Inc.</u>, 322 F.3d 371, 374 (5th Cir. 2003) (citing <u>Campbell v. Wells Fargo Bank</u>, 781 F.2d 440, 442 (5th Cir. 1986)). Rule 12(b)(6) dismissals are disfavored, and are appropriate only in rare circumstances. <u>Mahone v. Addicks Util. Dist. of Harris Cnty.</u>, 836 F.2d 921, 926 (5th Cir. 1988). But, as noted above, a Rule 12(b)(6) "[d]ismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief . . . ." <u>Torch Liquidating Trust v. Stockstill</u>, 561 F.3d 377, 384 (5th Cir. 2009) (citations omitted); <u>Rios v. City of Del Rio, Tex.</u>, 444 F.3d 417, 421 (5th Cir. 2006), <u>cert. denied</u>, 549 U.S. 825, 127 S.Ct. 181, 166 L.Ed.2d 43 (2006).

2.    Rule 8

Rule 8, Federal Rules of Civil Procedure, establishes general rules of pleading. Subsection (d) abolishes technical form and directs that pleading allegations be "simple, concise and direct." FED. R. CIV. P. 8(d)(1). Subsection (a)(2) requires a "short and plain statement of the claim *showing that the pleader is entitled to relief*." FED. R. CIV. P. 8(a)(2) (emphasis added). Consequently, a Rule 12 inquiry as to whether a claim upon which relief can be granted has been

pleaded is gauged by whether a complaint satisfies Rule 8's requirement to show that the pleader is entitled to relief.

Historically, Rules 8 and 12 have been interpreted liberally and as requiring only minimum notice pleadings; a complaint need only provide "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47-48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim."). Thus, a Rule 12(b)(6) dismissal was viewed as justified only when it appeared beyond a doubt that a plaintiff could prove no set of facts in support of her claim. See Conley, 355 U.S. at 45; United States Abatement Corp. v. Mobil Expl. & Producing U.S., Inc., 39 F.3d 556, 559 (5th Cir. 1994); Clark v. Amoco Prod. Co., 794 F.2d 967, 970 (5th Cir. 1986). Standards for the degree of notice required under Rule 8(a)(2) are evolving rapidly, however, and the pendulum recently has swung from minimum notice to more:

a.   *Twombly and Iqbal*

In 2007, the Supreme Court held that Rule 8's obligation to allege a claim showing that the pleader is entitled to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citations omitted). While detailed factual allegations are not required, plaintiffs must now allege *facts* sufficient to "nudge[] their claims across the line from conceivable to plausible . . . ." Id. at 570. Stated another way, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555 (citing 5C CHARLES ALAN WRIGHT &

ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216, pp. 235-236 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action").

Two years later, the Supreme Court decided <u>Ashcroft v. Iqbal</u>, --- U.S. ----, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Applying <u>Twombly's</u> plausibility standard, the court observed that two principles informed that decision: (1) "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is *inapplicable to legal conclusions*[]" and "[d]oes not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions[];" and (2) "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss," a determination involving "[a] context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u> at 1949-50 (emphasis added).

<u>Twombly</u> stated that the "no set of facts" language of <u>Conley v. Gibson</u> "after puzzling the profession for 50 years . . . has earned its retirement." <u>Twombly</u>, 550 U.S. at 563. The Fifth Circuit, perhaps using more descriptive language, subsequently observed that "<u>Twombly</u> *jettisoned* the minimum notice pleading requirement of <u>Conley v. Gibson</u> . . . and instead required that a complaint allege enough *facts* to state a claim that is *plausible* on its face." <u>St. Germain v. Howard</u>, 556 F.3d 261, 263 n.2 (5th Cir. 2009) (emphasis added) (citing <u>In re Katrina Canal Breaches Litig.</u>, 495 F.3d 191, 205 (5th Cir. 2007) ("To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face.") (citations omitted)).

Thus, it is now abundantly clear that identifying only what law forms the basis of the complaint, without pleading facts indicating *how* a defendant violated that law, proves only a theoretical possibility that a cause of action

*could* be stated against the defendant, not that plaintiff *did* state a cause of action.  See Travis v. Irby, 326 F.3d 644, 648 (5th Cir. 2003).  A recent Seventh Circuit case illustrates current judicial thought on the subject as follows:

> It is by now well established that a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened . . . that *might* be redressed by the law.

Swanson v. Citibank, N.A., --- F.3d ----, 2010 WL 2977297, at *2 (7th Cir. July 30, 2010) (emphasis in original) (citations omitted).

### b.    *Plausibility*

Swanson also observed that courts still struggle over how much higher the Supreme Court meant to set the bar when it decided Twombly and Iqbal.  All courts, however, acknowledge that the linchpin of the new Twombly/Iqbal pleading standard is an evolving concept of "plausibility."  To date, there is no precise definition of this new term of art and, perhaps, there never will be given Iqbal's instruction that a plausibility determination is a context-specific task that requires a reviewing court to draw on its judicial experience and common sense.  There are, however, broad parameters that provide some substantive shape and form to the concept.

First, *factual* allegations are plausibility prerequisites.    Labels, conclusions, and formulaic recitations do not suffice.  See Twombly, 550 U.S. at 555; see also Iqbal, 129 S.Ct. at 1947.  The rationale is apparent and salutary: abstract recitations and conclusory legal statements do nothing to distinguish a particular case before a court from every other hypothetically possible case in that field of law.  Brooks v. Ross, 578 F.3d 574, 581 (7th Cir. 2009).  Thus, in cases strikingly similar to the one at hand, reviewing courts conclude that

Twombly and Iqbal collectively teach that a "'near-verbatim recitation of portions of [unfair settlement practices specified in the Texas Insurance Code]' does not create a colorable claim against an adjuster-defendant unless coupled with *facts* indicating the adjuster's *individual* role in the alleged events." Killion v. Allstate Tex. Lloyds, No. CA-C-03-442-H, 2004 WL 612843, at *5 (S.D. Tex. Feb. 25, 2004) (emphasis added) (quoting Bailey v. State Farm Lloyds, No. Civ. A. H-00-3638, 2001 WL 34106907, at *4 (S.D. Tex. Apr. 12, 2001)). Similarly, conclusory allegations that defendants' conduct violated the Code without elaboration on what a given defendant supposedly said or did also fail. Bailey, 2001 WL 64106907, at *5.

Second, and counterbalancing the first factor, a pleading is not required to show probability of the truth of the facts alleged in order to state a plausible claim. Twombly made clear that "a well-pleaded complaint may proceed *even if it strikes a savvy judge that actual proof of those facts is improbable . . . .*" Twombly, 550 U.S. at 556 (emphasis added). Iqbal also distinguished between plausibility and probability, saying that "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for *more than a sheer possibility* that a defendant has acted unlawfully." Iqbal, 129 S.Ct. at 1949 (emphasis added). An interesting analogy is stated in Swanson:

> In statistics the range of probabilities is from 0 to 1, and therefore encompasses "sheer possibility" along with "plausibility." It seems . . . that what the Court was driving at was that even if the district judge doesn't think a plaintiff's case is more likely than not to be a winner (that is doesn't think p > .5), as long as it is substantially justified that's enough to avert dismissal.

Swanson, 2010 WL 2977297, at *9 (Posner, J., dissenting in part).

Thus, the Rule 12(b)(6) line establishing whether a complaint states a claim upon which relief can be granted is drawn not between what is "conceivable" and what is "probable," but rather between what is "conceivable" and what is "plausible." In other words, the critical inquiry is whether a plaintiff's claim is "conceivable" (*not enough* for Rule 12) or "plausible" (*sufficient* for Rule 12). <u>Iqbal</u>, 129 S.Ct. at 1951. Logically, this leads one to conclude that in most instances, a plaintiff's factual allegations (and the associated inferences) need not tell a *more* plausible story than alternative explanations; at most, such allegations need only tell a story that is *as* plausible as the alternatives.[13] Further, even when the story in a pleading's factual allegations is marginally *less* plausible, but still plausible, it should be sufficient for purposes of Rules 8 and 12.[14] The majority in <u>Swanson</u> put it this way:

---

[13]     <u>Twombly</u> and <u>Iqbal</u> both suggest that factual allegations which *in vacuo* might suffice to permit an inference of illegal behavior by a defendant do not survive plausibility analysis in the presence of an obvious, alternative lawful explanation for a defendant's conduct. <u>See Twombly</u>, 550 U.S. at 567-68, 568; <u>Iqbal</u>, 129 S.Ct. at 1951-52. Normally, a federal court presented with such obvious, alternative explanation likely would provide an opportunity to amend the complaint, order a Rule 7(a)(7) reply, or implement some other information-forcing procedure to allow a plaintiff to allege even more by way of factual content to nudge a claim across the line from conceivable to plausible. That option, however, does not exist when deciding an improper joinder issue in connection with a motion to remand because the court's examination is limited to facts pleaded in the state court petition.

[14]     Many courts, including the Fifth Circuit, adopt the interpretation (or a similar one) suggested in the preceding paragraph. <u>See generally</u> <u>Gonzalez v. Kay</u>, 577 F.3d 600 (5th Cir. 2009) (plaintiff can state a claim where "reasonable minds can differ" about whether particular conduct violates the FDCPA); <u>Ark. Pub. Emp. Ret. Sys. v. GT Solar Int'l, Inc.</u>, No. 08-cv-312-JL, 2009 WL 3255225 (D.N.H. Oct. 7, 2009) (defendants' alternative explanation does not render plaintiff's complaint implausible because defendants' explanation is not "obvious"); <u>Chao v. Ballista</u>, 630 F.Supp.2d 170 (D. Mass. 2009) (defendant's alternative explanation has to be "so overwhelming, that the claims no longer appear plausible"); <u>Destro v. Hackensack Water Co.</u>, No. 08-04776 (SRC), 2009 WL 3681903 (D.N.J. Nov. 2, 2009) (plaintiff's claim plausible where there "could" be a violation of duty of fair representation). Other federal appellate courts, however, appear to embrace a more restrictive interpretation. <u>See</u> <u>In re Travel Agent Comm'n Litig.</u>, 583 F.3d 896 (6th Cir. 2009) (where defendants' explanation is "just as likely" as plaintiffs' explanation, plaintiffs' claim is implausible); <u>Phillips v. Bell</u>, No. 08-1420, 2010 WL 517629 (10th Cir. 2010) (finding complaint implausible because "more plausible" reasons exist for alleged conduct).

> As we understand it, the Court is saying instead that the plaintiff must give enough details about the subject matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen.

Swanson, 2010 WL 2977297, at *3.

The interpretation suggested above (i.e., that Rules 8 and 12 usually require factual allegations that tell a story as plausible as the alternatives) best accords with the varied levels of pleading within the federal system. There are three main levels of pleading: Rule 8, which is the most liberal; Rule 9(b), which requires heightened pleading for fraud and mistake (but not for other states of mind) and is *slightly elevated* compared to Rule 8; and the pleading required by statutes like the Private Securities Litigation Reform Act (PSLRA),[15] which has been described as *"super heightened"* pleading.[16] During the same term that the Supreme Court decided Twombly, it also announced Tellabs Inc. v. Makor Issues & Rights, 551 U.S. 308, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007), a case interpreting the pleading standard for the PSLRA. Specifically, Tellabs stated that to satisfy PSLRA pleading, the inference of *scienter* required for the cause of action must be "more than merely plausible or reasonable-it must be cogent and at least *as compelling as any opposing inference of nonfraudulent intent.*" Id. at 314 (emphasis added).

---

[15] 109 Stat. 737 (codified in various places, but most importantly at 15 U.S.C. § 78u-4).

[16] See Andre Douglas Pond Cummings, "Ain't No Glory in Pain": How the 1994 Republican Revolution and the Private Securities Litigation Reform Act Contributed to the Collapse of the United States Capital Markets, 83 NEB. L. REV. 979, 1007 n.129 (2005) (introducing term); see also Geoffrey Christopher Rapp, Beyond Protection: Invigorating Incentives for Sarbanes-Oxley Corporate and Securities Fraud Whistleblowers, 87 B.U. L. REV. 91, 104 n.67 (2007) (adopting term); SEC v. Levin, 232 F.R.D. 619, 623 n.1 (C.D. Cal. 2005) (same).

Thus, if the plaintiff's theory of relief is "at least as compelling" as the alternative explanations, a PSLRA complaint will survive a motion to dismiss. If, under a super heightened pleading regime, a plaintiff's factual allegations and liability theory must only be as plausible as alternative explanations, it is incoherent to suggest that Rule 8's standard is as high or even higher than the PSLRA by requiring a plaintiff in a normal liberal pleading regime to also provide facts that tell a *more* plausible story than alternative explanations. Requiring a plaintiff's theory to be more plausible than alternatives would mean that Rule 8's pleading standard is *more* demanding than the PSLRA. It also would disregard both <u>Twombly</u> and <u>Iqbal</u> which made clear that Rule 8 does not establish a probability requirement.[17]

---

[17]    Although not directly on point, post-<u>Twombly</u>/<u>Iqbal</u> decisions in this district are consistent with the interpretation suggested above. In <u>Davis v. Collin Cnty. Cmty. Coll. Dist.</u>, No. 4:09cv309, 2010 WL 890246 (E.D. Tex. Mar. 9, 2010), a sex discrimination claim, wherein plaintiff asserted that a male student with a similar condition was not discharged from the program after submitting to the same drug test, survived a motion to dismiss because it "barely meets the pleading standards." <u>Id.</u> at *3. The court found that the allegation was at least "plausible" because it could raise an inference that plaintiff was treated differently because of her sex. <u>Id.</u> at *3.

In <u>Burnette v. Wells Fargo Bank, N.A.</u>, No. 4:09-CV-370, 2010 WL 1026968 (E.D. Tex. Feb. 16, 2010), a case involving a wrongful foreclosure claim, plaintiff alleged that the bank had no authority to appoint a substitute trustee, but did not supply relevant language or attach the deed. The court found that the allegation alone was sufficient at the motion to dismiss stage. <u>Id.</u> at *5-6. The court also found that it was immaterial that it could not determine whether plaintiff was alleging inadequate notice of the sale. <u>Id.</u> at *10. And finally, with regard to a Texas claim of unreasonable collection efforts, a cause of action the court found lacked clearly defined elements, the court used its "judicial experience and common sense" to find that the allegations gave rise to a plausible entitlement to relief. <u>Id.</u> at *8.

Finally, in <u>Dwyer v. City of Corinth, Tex.</u>, No. 4:09-CV-198, 2009 WL 3856989 (E.D. Tex. Nov. 17, 2009), a Section 1983 claim arising out of an officer's use of a taser on a minor who was having a seizure, the court found that the claim against the city could go forward where plaintiff alleged that the city's policy or custom, including poor discipline and training of officers, played a part in the deprivation of the plaintiff's rights. <u>Id.</u> at *9. The court stated that even though the allegations "do not contain the sort of specificity normally required, the allegations are nonetheless sufficient to withstand a motion to dismiss at the pleadings stage." <u>Id.</u>

3.    Pre-Twombly/Iqbal Circuit Jurisprudence

Circuit jurisprudence regarding improper joinder in cases decided before Twombly and Iqbal does not differ substantially. A defendant historically could defeat remand by showing that the state court petition failed to allege "specific actionable conduct" sufficient to support the causes of action asserted against non-diverse defendants. Griggs, 181 F.3d at 699. Further, "whether the plaintiff has stated a valid state law cause of action depends upon and is tied to the *factual fit* between the plaintiffs' allegations and the pleaded theory of recovery." Id. at 701 (emphasis added). Thus, failure to plead facts to support the asserted cause of action repeatedly has doomed a plaintiff's joinder of an in-state defendant. See Larroquette v. Cardinal Health 200 Inc., 466 F.3d 373, 378 (5th Cir. 2006); Hornbuckle v. State Farm Lloyds, 385 F.3d 538, 542 (5th Cir. 2004).

In sum, the result likely will be the same whether a federal court reviews a state petition under evolving plausibility standards (emanating from Twombly and Iqbal) or under traditional circuit jurisprudence regarding improper joinder of non-diverse defendants. Under each, a removing defendant sustains its burden to show that an in-state defendant was improperly joined by demonstrating that the state petition was devoid of factual allegations that support the cause of action asserted against that defendant.

B.    *Causes of Action*

Against ICA and Saucier, Escuadra asserts causes of action for fraud, conspiracy to commit fraud, and numerous violations of the Texas Insurance Code enumerated earlier. Under Texas law, essential elements of a fraud claim are: (1) defendant made a representation to plaintiff; (2) the representation was material; (3) the representation was false; (4) when the representation was made, the defendant a) knew that the representation was false or b) made the

representation recklessly, as a positive assertion, and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury. In re First Merit Bank, 52 S.W.3d 749, 758 (Tex. 2001).

Texas law also recognizes a cause of action for civil conspiracy. To prevail on a civil conspiracy claim, a plaintiff must show: (1) the defendant was a member of a combination of two or more persons; (2) the object of the combination was to accomplish a) an unlawful purpose or b) a lawful purpose by unlawful means; (3) the members had a meeting of the minds on the object or course of action; (4) one of the members committed an unlawful overt act to further the object or course of action; and (5) the plaintiff suffered injury as a proximate result of the wrongful act. Tri v. J.T.T., 162 S.W.3d 552, 556 (Tex. 2005); Ins. Co. of N. Am. v. Morris, 981 S.W.2d 667, 675 (Tex. 1998).

Finally, Texas law also confers a private cause of action on consumers for unfair or deceptive insurance practices in violation of the Texas Insurance Code. See, e.g., Gasch, 491 F.3d at 282; Garrison, 966 S.W.2d at 484-86. Such causes of action can be brought against any "person" who is "engaged in the business of insurance," which is defined broadly to include both insurers and adjusters. TEX. INS. CODE ANN. § 541.002 (Vernon Supp. 2007); Gasch, 491 F.3d 282; Garrison, 966 S.W.2d at 487. Texas appellate courts, unfortunately, have not articulated essential elements for private causes of action for Code violations. But, based upon an interpretation of the statute and relevant case law, O'Connor infers them to be: (1) the plaintiff is a "person" as defined by the Texas Insurance Code § 541.002(2); (2) the defendant is a "person" engaged in the business of insurance as defined by the Texas Insurance Code § 541.002(2); (3) the defendant engaged in an act or practice that violated Texas Insurance Code

chapter 541; and (4) the defendant's act or practice was a producing cause of actual damages. See MICHOL O'CONNOR, O'CONNOR'S TEXAS CAUSES OF ACTION, Chap. 13-C, § 1.1 (2010) (citing TEX. INS. CODE § 541.151 and <u>Allstate Ins. Co. v. Watson</u>, 876 S.W.2d 145, 147 (Tex. 1994)). Assuming *arguendo* that this articulation is correct, proving the third element will require – in some instances at least – more than simply showing that a defendant negligently mishandled a claim. Rather, proof of that element requires a showing that the defendant also acted in bad faith, i.e., unscrupulously with respect to the insured plaintiff's relatively disadvantageous position.[18] See <u>Universe Life Ins. Co. v. Giles</u>, 950 S.W.2d 48, 64 (Tex. 1997).

## C. *Escuadra's Factual Allegations*

Plaintiff's original state court petition alleges no specific actionable conduct against ICA. The only specific actionable conduct alleged against Saucier (for which ICA might be vicariously liable) relates to Saucier's alleged violations of the Texas Insurance Code. That alleged conduct is:

(1) "*Defendant Saucier failed to even go up on the roof, making a thorough inspection of that damage impossible*"; and

(2) Saucier "*failed and refused to include obvious structural damage to the home*," and should have requested "*that a qualified engineer be assigned to review the damage to determine whether it should be included in her damage estimate*."

Pl.'s Original Pet., ¶ 31. The petition also directs the court repeatedly to facts "as described above." But there are no other pleaded facts with respect to the

---

[18] The Texas Insurance Code enumerates nine "unfair settlement practices" upon which private causes of action may be based. TEX. INS. CODE ANN. § 541.060(a) (Vernon Supp. 2007). Only one of the nine expressly mentions failure to act in good faith. TEX. INS. CODE ANN. § 541.060(a)(2). Thus, one might argue that proving bad faith is not required to recover under the eight remaining actionable practices listed in the Code.

fraud and conspiracy causes of action. And, with respect to the Insurance Code violations, the other supposed "facts" merely recite statutory provisions and a conclusory allegation that ICA and Saucier violated them.

## D.   *Application*

Escuadra's state petition alleges no facts that permit this court to conclude that her causes of action against ICA or Saucier for fraud and civil conspiracy are plausible. It is doubtful that her state petition even satisfies the now-"jettisoned" minimum notice requirement that preceded <u>Twombly</u> with respect to these claims. Thus, if the only allegations against ICA and Saucier were these two causes of action, GeoVera easily would carry its heavy burden of showing that these non-diverse defendants were improperly joined.

The same conclusion is warranted with respect to most of Escuadra's alleged Code violations. The only actionable conduct alleged was Saucier's failure to make an on-roof inspection, failure to secure the services of an engineer when estimating damages, and failure to include obvious structural damage to Escuadra's home in her (Saucier's) damage estimate. These allegations are conclusory in part, and in any event do not nudge from conceivable to plausible Escuadra's claims that Saucier *misrepresented material facts relating to coverage*, or that she failed to promptly *provide a reasonable explanation*, or that she failed within a reasonable time to *affirm or deny coverage*. So, if these were the only asserted Code violations, GeoVera again would succeed in showing that ICA and Saucier were improperly joined.

The conclusion is different, however, when Escuadra's factual averments are measured against her remaining allegation that Saucier refused to pay her claim fully *without conducting a reasonable investigation*. First, the state

petition clearly provided minimum fair notice required by pre-<u>Twombly</u>/<u>Iqbal</u> jurisprudence. It identified the exact statutory violation that she thinks occurred, by whom, when and how. Second, Escuadra's explanation and theory are plausible, thus satisfying new <u>Twombly</u>/<u>Iqbal</u> standards. Judicial experience and common sense in a context-specific review counsel that conducting a reasonable investigation *does* require an on-roof inspection and expert services of an engineer in many instances.[19] Third, unlike <u>Twombly</u> and <u>Iqbal</u>, there is no alternative, context-specific *obvious* lawful explanation before the court which suggests that an on-roof inspection and engineer's evaluation likely were *not* necessary.[20] Thus, Escuadra's state petition proffered, albeit barely, a plausible claim with respect to this one allegation.[21]

_____

[19] The undersigned has managed several hundred cases against insurers and adjusters filed in or removed to this court after Hurricane Rita and Hurricane Ike. Many, perhaps most, involved roof damage claims. Observing those cases, the court notes that engineers and up-close inspections frequently are employed by all parties.

The court does not imply that on-roof inspections and engineer's services are *always* essential to conducting a reasonable investigation. "The scope of the appropriate investigation will vary with the claim's nature and value and the complexity of the factual issues involved." <u>State Farm Fire & Cas. Co. v. Simmons</u>, 963 S.W.2d 42, 44 (Tex. 1998). No Texas statute, rule, or judicial decision imposes on adjusters an absolute duty to actually go on roofs to inspect alleged roof damage or to utilize the services of an engineer, and the court readily can conceive of instances in which reasonable investigations would *not* require either. Whether this is such a case is not known, but Escuadra's explanation and theory of liability are plausible.

[20] Defendant asserted at oral argument that, if anything, Saucier's failure to go on the roof and hire an engineer amounted to mere negligence. While this may be an alternative explanation, it is not so *obvious* an explanation that plaintiff's claims no longer appear plausible.

[21] This conclusion generally accords with those of sister Texas federal courts in similar circumstances. <u>See</u> <u>generally</u> <u>Fairchild v. Allstate Tex. Lloyd's</u>, No. H-10-634, 2010 WL 2486980, at *3 (S.D. Tex. June 15, 2010) (granting motion to remand where Allstate had "not proffered any evidence disproving Plaintiff's allegations" and thus "had not met its burden to show Plaintiff has no reasonable basis for recovery against [a]djusters"); <u>Wofford v. Allstate Tex. Lloyd's</u>, No. 4:10-cv-00776, 2010 WL 2331361, at *7 (S.D. Tex. June 9, 2010) (granting motion to remand where Allstate failed to meets its "heavy burden to establish with certainty that plaintiffs have *no reasonable possibility* of recovery against [the adjuster] individually") (original emphasis).

If – and this "if" is a big one – also proving Saucier's bad faith is a required element of proof, the question becomes closer. At this stage, an inference that Saucier acted in bad faith is pure speculation. Thus, Escuadra's state petition may assert only a conceivable allegation of bad faith, as opposed to a plausible one.

Although Iqbal suggested that lack of factual allegations plausibly suggesting the defendants' discriminatory state of mind could be fatal,[22] this complexity does not change the equation. There is a difference between intentional racial discrimination and bad faith. "Bad faith" is not self-defining, and it causes definitional problems in many instances.[23] Also, this form of *subjective* malfeasance is hard to distinguish at the pleading stage from factual allegations sufficient to state a plausible claim that an adjuster conducted an *objectively* unreasonable investigation. Finally, and most importantly, to the extent that a case like this turns on the defendant's *state of mind* (and "bad faith" suggests as much), and to the extent the most relevant evidence of state of mind is in the hands of the defendant, the Fifth Circuit suggests – in post-Iqbal cases – that dismissal should be *sparingly used*. See Floyd v. City of Kenner, La., 351 F. App'x 890, 895 (5th Cir. 2009) (holding that where the state of mind of the defendant was at issue in an alleged illegal search case, "[t]his is the type of conflict that warrants discovery" and not dismissal); see also Morgan v. Hubert, 335 F. App'x 466, 472 (5th Cir. 2009) ("The failure of specificity is no fault of [the plaintiff's], however, because he has not yet had the benefit of discovery, and is bound by Rule 11 to allege only those facts for which he has or will likely have evidentiary support."); Schultea v. Wood, 47 F.3d 1427, 1432 (5th

[22]    Iqbal, 129 S.Ct. at 1952.

[23]    See Roger C. Henderson, The Tort of Bad Faith in First-Party Insurance Transactions After Two Decades, 37 Ariz. L. Rev. 1153, 1153 (1995).

Cir. 1995) (finding that plaintiff is not required to plead facts "peculiarly within the knowledge of defendants").

In summary, Escuadra's state petition contained factual allegations sufficient to render plausible one of her statutory claims against an in-state, non-diverse defendant, Jade Saucier. GeoVera does not carry its burden to show that such defendant, Saucier, was improperly joined to defeat federal jurisdiction. Accordingly, Saucier's citizenship cannot be ignored, and the court lacks original subject-matter jurisdiction under 28 U.S.C. § 1332, the only basis upon which this action was removed from state court.[24]

## VI. Attorneys' Fees

Escuadra also prays for an award of attorneys' fees pursuant to 28 U.S.C. § 1447(c). The statute provides that an order remanding a case "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Id. There is no presumption in favor of awarding fees following a remand, and the use of the term "may" in Section 1447(c) leaves the district court with discretion, with no heavy congressional thumb on either side of the scales. Martin v. Franklin Capital Corp., 546 U.S. 132, 139, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005). That discretion is guided by the standard that: "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." Id. at 141. "Conversely, when an objectively reasonable basis exists, fees should be denied." Id. (citing Hornbuckle v. State Farm Lloyds, 385 F.3d 538, 541 (5th Cir. 2004); Valdes v. Wal-Mart Stores, Inc., 199 F.3d 290, 293 (5th Cir. 2000)).

---

[24] Because the court concludes that defendant Saucier was not improperly joined, it is unnecessary to address Escuadra's remaining points that removal was improper on amount-in-controversy and rule-of-unanimity grounds.

Although Escuadra prevails on her motion to remand, GeoVera had an objectively reasonable basis for removal. Therefore, Escuadra's request for attorneys' fees will be denied.

## VII. Conclusion

This action will be remanded. An appropriate order will be entered separately.

**SIGNED** this __9__ day of September, 2010.

Earl S. Hines
United States Magistrate Judge